IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| WILLIAM HOZEY,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CELLCO PARTNERSHIP (dba VERIZON WIRELESS); and DOE DEFENDANTS 1-25,<br><br>　　　　Defendants. | Case No. 20-cv-00021-DKW-RT<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

　　Plaintiff William Hozey alleges that Defendant Cellco Partnership ("Verizon") fired him in 2018 because of his age. *See* Dkt. No. 1-1. Before the Court is Verizon's motion for summary judgment. Dkt. No. 46. Verizon argues there is no genuine issue for trial because it has provided a legitimate, nondiscriminatory reason for terminating Hozey—dishonesty with regard to his obligations under a Performance Improvement Plan—and Hozey cannot proffer sufficient evidence to show that reason is pretextual. The Court agrees, and, for the reasons articulated below, the motion is GRANTED.

## RELEVANT BACKGROUND

　　Hozey worked at Verizon from July 2007 to June 2018. Dkt. No. 50 at 7. He served in various roles, eventually managing several other employees. *Id.* at

7–8. During his tenure, Hozey was placed on several Performance Improvement Plans ("PIPs"). *Id.* at 8–9. Relevant to this case, Hozey's most recent PIP required him to have weekly one-on-one meetings with subordinates and provide summaries of those meetings to his supervisor. *Id.* at 12.

During the week of May 14, 2018, Hozey was working from Hilo and Pahoa in Hawaiʻi. *Id.* On Thursday, March 17, 2018, he had a call with one of his subordinates, Ian Williams, who was located in Alaska. *Id.* The call was short and stilted as Hozey had bad cell phone reception. *Id.* Hozey called Williams again the next day to complete the weekly one-on-one meeting required by his PIP. *Id.* at 12–13. On May 21, 2018, Hozey called Williams again, telling him, "we didn't have a 1:1 on Thursday. I was on Big Island, but if Irwin [Siongco] asks, we had our 1:1 on Friday because we talked throughout the week anyway." Dkt. No. 47-3 at 1. He sent Williams a text message that same day stating, "[w]e had our 1on1 Friday to discuss your teams [sic] forecast, coaching, and team overall performance and IoT strategy." *Id.* Also on May 21, 2018, Hozey emailed Irwin Siongco, his supervisor, summarizing his May 17-18 one-on-one meeting with Williams. Dkt. No. 47-23 at 2–3. Shortly thereafter, Hozey emailed Williams a summary of what he told Siongco they had discussed during their May 17–18 one-on-one meeting. Dkt. No. 47-22 at 3.

Williams avers that he "never had a meeting with [Hozey] on May 18, 2018." Dkt. No. 47-3 at 1. Rather, he believed Hozey was "ask[ing him] to lie to Mr. Siongco" about the occurrence of the May 18, 2018 meeting. *Id.* Unwilling to do so, Williams reported Hozey to Robyn Jacobsen, a human resources employee. *Id.* Siongco approached Hozey about this allegation, asking Hozey to confirm that the May 18, 2018 one-on-one meeting with Williams had, in fact, occurred. Dkt. No. 50 at 14. Hozey maintained that the meeting had occurred and that his messages to Williams about the meeting were simply to document the meeting's content and to confirm for Williams that the May 18, 2018 call counted as his one-on-one meeting. *Id.* 14–15. A short investigation into the allegation was conducted.[1] Dkt. No. 47-1 at 6–7. After reviewing the communications detailed above, Siongco, along with three human resources employees, "determined that Verizon could not continue [Hozey's] employment" because his conduct—as alleged by Williams and supported by Hozey's texts/emails—violated Verizon's policies on integrity and maintaining accurate corporate records. Dkt. No. 47-1 at 7–8.

Hozey filed his complaint in Hawai'i state court on December 26, 2019 bringing state and federal age-based discrimination claims. Dkt. No. 1-1.

---

[1] Hozey contends he was never interviewed as part of this investigation, nor were Verizon's phone records ever checked for evidence of his May 18, 2018 call to Williams. Dkt. No. 50 at 14–15.

3

Verizon filed a notice of removal on January 14, 2020, Dkt. No. 1, and the case has been litigated in federal court since. The Court dismissed Hozey's state law age discrimination claim on June 22, 2020, Dkt. No. 32, leaving only Hozey's federal Age Discrimination in Employment Act ("ADEA") claim. *See* Dkt. No. 1-1 at 7–8. On February 8, 2021, Verizon filed a motion for summary judgment on that remaining claim. The motion has now been fully briefed. This order follows.

## **LEGAL STANDARD**

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' when, under the governing substantive law, it could affect the outcome of the case. A 'genuine issue' of material fact arises if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 322 F.3d 1039, 1046 (9th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

In evaluating a motion for summary judgment, the Court construes all evidence and reasonable inferences therefrom in the light most favorable to the nonmoving party. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987). Thus, the moving party bears the burden of persuading the court as to the absence of a genuine dispute of material fact.

*Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, the nonmoving party must set forth "significant probative evidence" demonstrating such a genuine dispute exists. *T.W. Elec. Serv.*, 809 F.2d at 630 (citation and internal quotation marks omitted). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion," and can do so by either "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

## DISCUSSION

### I.   Framework

The ADEA makes it unlawful "to discharge any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). To succeed on an ADEA claim, a plaintiff must "establish that age was the 'but-for' cause of the employer's adverse action." *Gross v .FBL Fin. Servs.*, 557 U.S. 167, 177 (2009). Courts "evaluate ADEA claims that are based on circumstantial evidence of discrimination by using the three-stage burden-shifting framework laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S .792 (1973)." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citation omitted). Under that framework:

> [T]he employee must first establish a *prima facie* case of age discrimination. If the employee has justified a presumption of

5

>  discrimination, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its adverse employment action. If the employer satisfies its burden, the employee must then prove that the reason advanced by the employer constitutes mere pretext for unlawful discrimination.

*Id.* (citations omitted).

To establish a *prima facie* case, a plaintiff must show "he was (1) at least forty years old, (2) performing his job satisfactorily, (3) discharged, and (4) either replaced by substantially younger employees with equal or inferior qualifications or discharged under circumstances otherwise giving rise to an inference of age discrimination." *Id.* (citing *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1281 (9th Cir. 2000)). An inference of discrimination can be established by showing "the employer had a continuing need for [the employee's] skills and services in that their various duties were still being performed . . . or by showing that others not in their protected class were treated more favorably." *Coleman*, 232 F.3d at 1281.

After a *prima facie* case is established and an employer articulates a legitimate, nondiscriminatory reason for its employment decision, a plaintiff may "demonstrate pretext in either of two ways: (1) directly, by showing that unlawful discrimination more likely than not motivated the employer; or (2) indirectly, by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable." *Earl v. Nielsen*

*Media Research, Inc.*, 658 F.3d 1108, 1112–13 (9th Cir. 2011); *accord France v. Johnson*, 795 F.3d 1170, 1175 (9th Cir. 2015).  While circumstantial evidence of pretext must be specific and substantial, "a plaintiff's burden to raise a triable issue of pretext is hardly an onerous one."  *France*, F.3d at 1175 (citing *Earl*, 658 F.3d at 1113) (internal quotation marks omitted); *see also Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1124 (9th Cir. 2000) ("As a general matter, the plaintiff in an employment discrimination action need produce very little evidence in order to overcome an employer's motion for summary judgment.").

## II.   Analysis

Verizon concedes, for purposes of this motion, that Hozey has established a *prima facie* case of age discrimination.[2]  Dkt. No. 46-1 at 15–16 ("Defendant will not challenge Plaintiff's ability to show a *prima facie* case").  Verizon argues only that it has presented a legitimate, nondiscriminatory reason for terminating Hozey: he lied about holding a weekly one-to-one meeting with a subordinate, created false documentation to bolster that lie, and encouraged that subordinate to falsely claim the meeting occurred.[3]  *Id.* at 16–19.

---

[2] For this reason, the Court passes no judgment on whether Hozey has, in fact, proven a *prima facie* case of age discrimination.

[3] Verizon seems to suggest that its decision to terminate Hozey was based both on this incident and his work performance in general.  *See, e.g.*, Dkt. No. 46-1 at 20–21 ("Defendant's explanation here is that Plaintiff was an objectively bad employee, lacking in integrity, whose misconduct was unacceptable to a company that places great weight on managerial honesty").  If so, his argument is at odds with the evidence.  Hozey was on a PIP for his alleged work-related deficiencies—*e.g.,* Verizon concluded a performance plan, not termination, was the

Hozey argues Verizon's explanation for his termination is unworthy of credence—and is thus pretextual—for three reasons. Dkt. No. 49 at 10–14. First, the one-on-one meeting Verizon alleges never occurred and that Hozey lied about did, in fact, occur, and Verizon's investigation regarding that fact was inadequate. *Id.* at 11–12. Second, even if the misconduct alleged is true, termination of an upper-level manager with eleven years at the company for such a minor infraction—*i.e.*, failure to hold a one-on-one meeting and lying about it—is an outsized punishment. *Id.* at 13. Finally, Verizon has a general history of age-related animus.

For the reasons articulated below, the Court finds these reasons, considered independently or collectively, fail to adequately demonstrate Verizon's stated reason for terminating Hozey was pretextual. Accordingly, there is no genuine issue for trial, and Verizon's summary judgment motion is GRANTED.

---

appropriate remedy to address Hozey's alleged poor workplace performance. And, clearly, the incident surrounding the one-on-one meeting precipitated his termination. Dkt. No .47-1 (Verizon human resources employee, Linda Yamada, explaining the decision to terminate Hozey was based on an investigation into the May 18, 2018 meeting between Hozey and Williams); *see also* Dkt. No. 50 at 15 (Hozey informed he is being terminated less than a month after the May 18, 2018 one-on-one meeting). In other words, the Court agrees with Hozey that Verizon "conflat[es Hozey's] performance with their stated basis for termination." *See* Dkt. No. 49 at 12. Accordingly, the Court considers only the one-on-one meeting incident as Verizon's reason for terminating Hozey.

### A.     Whether the One-on-One Meeting Occurred

Hozey contends that "the factual premise upon which [Verizon's] reason [for terminating him] is grounded, *i.e.*, the nonoccurrence of a meeting between Mr. Williams and [Hozey], is faulty because the meeting did, in fact, take place." Dkt. No. 49 at 11.   Verizon argues that whether the meeting took place is largely irrelevant; rather, what matters is whether Verizon had reason to believe the meeting had not taken place and that Hozey took steps to cover up that fact.   Dkt. No. 51 at 4–7.   The Court agrees with Verizon.

In determining whether an employer's "proffered justifications were 'false,' it is not important whether they were objectively false (*e.g.*, whether [an employee] actually lied).   Rather, courts only require that an employer honestly believed its reason for its actions, even if its reason is foolish or trivial or even baseless."[4] *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1063 (9th Cir. 2002) (citing *Johnson v. Nordstrom, Inc.*, 260 F.3d 727, 733 (7th Cir. 2001)).[5]   Where a

---

[4]Hozey argues that this Court should give *res judicata* effect to the State of Hawaiʻi Department of Labor and Industrial Relations' ("DLIR") determination that Verizon had not proven Hozey was terminated due to misconduct.   Dkt. No. 49 at 14–16.   But as Hozey acknowledges, "the administrative burden and the *McDonnell Douglas* burden shifting schemes are not identical." *Id.* at 15–16.   While the administrative finding requires a "preponderance of the best evidence" to show *actual misconduct*, Dkt. No. 50 at 30 (DLIR decision), *Villiarimo* makes clear that such a finding is not required here, 281 F.3d at 1063.   The issue before this Court is whether Verizon had reason to believe the May 18 meeting had not occurred and Hozey had taken steps to cover up that fact, not whether, in fact, that meeting occurred.   Thus, *res judicata* is inapplicable.
[5]While *Villiarimo* is a Title VII case, the same rule applies in the ADEA context.   *See McCarthy v. Hawaiian Parasail, Inc.*, 2014 WL 6749415, at *6 (D. Haw. Nov. 30, 2014).

9

plaintiff "present[s] no evidence that [the employer] did not honestly believe its proffered reasons," the Court will not speculate.  *Id.*

As Verizon points out, Dkt. No. 51 at 6 n.2, Hozey acknowledges that Williams reported to a human resources employee that the May 18, 2018 meeting between Williams and Hozey did not occur and that Hozey had asked Williams to lie and say that it had.  Dkt. No. 50 at 14 (Hozey himself alleging that Williams "used my email and text communications to falsely report to Human Resources that I asked him to lie to Mr. Siongco about having the [May 18] meeting"). Hozey may be displeased that the company sided with Williams and interpreted Hozey's communications to Williams against him, but based on the record before the Court, no reasonable juror could conclude that Verizon did not have reason to believe that Hozey had violated company policy.  Therefore, in this instance, whether the precipitating event—the meeting between Hozey and Williams—occurred is simply not probative evidence of pretext.[6]

---

[6] The Court acknowledges that this may not be true in all instances.  Where an employer alleges their employment decision was based on the occurrence or nonoccurrence of an event or events, it may indeed be important if the company had and disregarded information about the occurrence or nonoccurrence of the event(s).  But that is not what is alleged here.  Verizon had the word of one employee—along with several communications—against that of another, and it made a credibility determination.  Other than faulting Verizon for not checking internal phone records, Hozey has produced *no evidence* that Verizon was aware the May 18, 2018 meeting between himself and Williams occurred.  *See* Dkt. No. 49 at 10–12.  Nor is it clear what those records would, in any event, show.  Williams did not claim that he never spoke to Hozey on May 18, only that he did not have the type of substantive one-on-one discussion contemplated by Hozey's PIP and about which Hozey urged Williams to verify.

### B. Appropriateness of Verizon's Action

Hozey further argues that "even if the allegations against [him] were true, they [were] not so serious as to warrant the termination of a senior leader with eleven years of experience." Dkt. No. 49 at 13. This argument is unpersuasive because, as Verizon correctly notes, Dkt. No. 51 at 5 n.1, "[t]he ADEA was not intended as a vehicle for the general judicial review of business decisions." *Phipps v. Gary Drilling Co., Inc.*, 722 F. Supp. 615, 620 (N.D. Cal. 1989) (citation omitted). Thus:

> [The] Court does not sit as a super-personnel department that reexamines an entity's business decisions. No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken a firm's managers, the ADEA does not interfere.

*Coleman v. Auto. Club of Southern California*, 2005 WL 8176833, at *6 (E.D. Cal. Nov. 2, 2005) (citing *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991)) (internal quotation marks omitted).

As discussed above, no reasonable juror could find Verizon did not have reason to believe Hozey violated the company's policies. And it is clear that violating Verizon's policies is grounds for termination. Dkt. No. 47-5 at 8 (Verizon's code of conduct explaining that "[f]ailure to comply with any provision of this Code or company policy is a serious violation and may result in disciplinary action, up to and including termination of employment"). Even if the Court agrees that the consequence (termination)

11

is not commensurate with the alleged misconduct (covering up the fact that a manager failed to hold a single one-on-one meeting with a subordinate), the Court's view is irrelevant to the ADEA inquiry.[7]   Thus, the possible mismatch between consequence and conduct here is not probative evidence of pretext.

### C.  General Age-Related Animus

Hozey presents several pieces of evidence allegedly demonstrating Verizon's age-related animus.  Verizon's executives "touted the company's preference for youth, describing their intent to drive a younger mentality in leadership positions in order to reach the millennial demographic."  Dkt. No. 49 at 6; *accord* Dkt. No. 50 at 13.  This mentality manifested in "at least five of [Hozey's] contemporaries [being] either demoted or terminated and replaced by significantly younger people" between 2014 and 2018.  Dkt. No. 49 at 6; *accord* Dkt. No. 50 at 17–19.  Further, one of Hozey's supervisors, Eric Reed, once told Hozey his way of thinking and leadership style were "outdated."  Dkt. No. 49 at 7; Dkt. No. 50 at 18.

---

[7]Moreover, Verizon is correct, Dkt. No. 46-1 at 17–19, that courts consistently hold that violating company policy, particularly around integrity, is proper grounds for termination.  *See, e.g.*, *Rezentes v. Sears, Roebuck * Co.*, 729 F. Supp. 2d 1197, 1205 (D. Haw. 2010) ("[The employer] may have honestly believed that [the employee] violated company policy and then lied about her actions.  Firing an employee because of honesty and integrity concerns is a legitimate nondiscriminatory reason for termination.").

Hozey's allegations that executives "touted" a "preference for youth" and a desire to "drive a younger mentality in leadership positions" are too vague and unsupported to serve as evidence that he was terminated because of his age. There is simply no evidence in the record concerning when and in what context these statements were made or whether anyone expressing them was involved in Hozey's termination. Moreover, these types of "vague statements" are "insufficient to create a genuine issue of fact of an inference of discrimination." *Pfeffer v. Hilton Grand Vacations Co., LLC*, 2009 WL 37519, at *9 (D. Haw. 2009) (citing litany of Ninth Circuit cases so holding).

Likewise, the Court is provided little context concerning Hozey's similarly-aged contemporaries who were allegedly demoted or terminated. *See* Dkt. No. 50 at 17. Hozey alleges that four other employees in leadership positions were replaced by younger employees. *Id.* But the record offers little more about these employment decisions.[8] Significantly, each of these demotions/terminations happened ***in 2014***, ***four years before*** Hozey himself was terminated. *Id.* These demotions/terminations, without

---

[8]Indeed, there are many reasons for an employee being demoted or terminated, including but not limited to: a reorganization requiring position change; voluntarily leaving the company for a better opportunity; voluntarily taking a demotion for personal or familial reasons; termination or demotion for discovered wrongdoing; and, as argued here, unlawful bias or prejudice. The Court cannot simply take on faith that each documented case was the result of age-related bias.

13

context and remote in time as they are, simply cannot support an inference of age-related discrimination or otherwise impugn Verizon's stated reason for terminating Hozey.

Hozey's claim that a former supervisor once told him his way of thinking and leadership style were outdated fares no better. A biased statement *can* serve as probative evidence of animus. *See France*, 795 F.3d at 1176 (citations omitted). But the biased statement must be made by someone who, at minimum, "influenced or was involved in" the employment decision. *Id.* (citing *Poland v. Chertoff*, 494 F.3d 1174, 1182 (9th Cir. 2007)). And "a vague statement" that does not clearly demonstrate age-related bias "is insufficient to create a genuine issue of fact of an inference of discrimination." *Pfeffer*, 2009 WL 37519, at *9.

Here, the allegedly biased statement was made by Eric Reed, Hozey's supervisor from November 2012 to December 2014. Dkt. No. 46-1 at 5; Dkt. No. 47-1 at 3 ¶ 16. Mr. Reed was not Hozey's supervisor when he was terminated in 2018, and there is no evidence in the record that Mr. Reed influenced or was involved in the decision to terminate Hozey. Dkt. No. 46-1 at 5; Dkt. No. 47-1 at 3 ¶ 16. Accordingly, Mr. Reed's vague statement cannot serve as evidence of age-related bias or otherwise impugn Verizon's stated reasons for terminating him. *Cf. France*, 795 F.3d at

1176–77 (finding biased statements sufficient to support claim of pretext where person who uttered them was significantly involved in the employment decision even if not the ultimate decisionmaker).

## CONCLUSION

For the reasons set forth herein, Verizon's motion for summary judgment, Dkt. No. 46, is GRANTED.

IT IS SO ORDERED.

DATED: April 7, 2021 at Honolulu, Hawai'i.



Derrick K. Watson
United States District Judge

---

*Hozey v. Cellco Partnership (dba Verizon Wireless) and Doe Defendants 1-15*, Civil No. 20-00021-DKW-RT; **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**